UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DINAH CANADA, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>MERACORD, LLC, et al.,<br><br>            Defendants. | CASE NO. C12-5657 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

    This matter comes before the Court on Defendants Lloyd E. Ward, Amanda Glen Ward, Lloyd Ward, P.C., Lloyd Ward & Associates, P.C. ("LWA"), The Lloyd Ward Group, P.C. ("LWG"), Ward Holdings, Inc., and Settlement Compliance Commission, Inc.'s (collectively "Ward Defendants") motion to dismiss (Dkt. 51). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

    On July 24, 2012, Plaintiffs Marie Johnson-Peredo ("Johnson-Peredo"), Dinah Canada ("Canada"), and Robert Hewson ("Hewson") (collectively "Plaintiffs") filed a

1  class action complaint against numerous defendants.  Dkt. 1.  On October 29, 2012,

2  Plaintiffs filed an amended class action complaint against the Ward Defendants and

3  Meracord, LLC ("Meracord"), Linda Remsberg, and Charles Remsberg alleging

4  violations of (1) the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C.

5  §§ 1961–1968 ("RICO"); (2) the Washington Debt Adjusting Act, RCW Chapter 18.28

6  ("DAA"); (3) the Washington Consumer Protection Act, RCW Chapter 19.86 ("CPA");

7  (4) aiding and abetting the commission of unfair and deceptive business conduct; (5)

8  breach of fiduciary duty; and (6) unjust enrichment.  Dkt. 41.

9        On November 15, 2012, the Ward Defendants filed a motion to dismiss (Dkt. 51)

10 and the Meracord Defendants filed a motion to stay or dismiss (Dkt. 54).  On December

11 10, 2012, Plaintiffs responded.  Dkts. 56 & 58.  On December 14, 2012, Defendants

12 replied.  Dkts. 62 & 63.

## II. FACTUAL BACKGROUND

14       Plaintiffs Canada and Hewson allege that they signed "up for the debt settlement

15 services of Meracord" and one of Meracord's "front-end" debt settlement companies

16 ("Front DSCs").  Complaint, ¶¶ 18 & 19.  Meracord, formerly Noteworld, LLC, is a

17 Delaware limited liability company with its principal place of business in Tacoma,

18 Washington.  *Id*. ¶ 21.  Plaintiffs allege that "Meracord has conspired and/or currently

19 conspires with scores (if not hundreds) of [Front DSCs], who together with Meracord

20 compose the Meracord Enterprise."  *Id*. ¶ 23.

21       Johnson-Peredo declares that she entered her contact information into a form on a

22 debt settlement website and was contacted shortly thereafter by a representative of LWA,

Rona Favreau. Dkt. 59, Declaration of Marie Johnson-Peredo, ¶¶ 7–8. Johnson-Peredo orally agreed to retain LWA to settle her debt. ¶ 15. Ms. Favreau esigned Johnson-Peredo's signature to a Client Services Agreement ("CSA"). *Id*. ¶¶ 15, 18. A few days later, Johnson-Peredo received a "Debt Relief Package" by mail that contained various document, including the esigned CSA. *Id*. ¶ 18.

Between September 2010 and October 2011, Noteworld, currently Meracord, deducted $5,633.42 from Johnson-Peredo's bank account in monthly payments. *Id*. ¶ 24. Johnson-Peredo contends that, even though she made payments to Noteworld, none of her debt was settled. *Id*.

With regard to arbitration, the CSA agreement contains numerous clauses including a clause regarding arbitration. Specifically, the CSA provides as follows:

> **11. Arbitration of Dispute**: In the event of a dispute regarding LWG's representation of Client's claims and defenses, or monies owed by Client to LWG, Client hereby agrees to notify LWG in writing of any such complaint so that LWG can attempt to reasonably address and, if appropriate, remedy the complaint to Client's complete satisfaction. LWG representatives will be happy to discuss policies and procedures set forth herein with you at any time. If you have any questions, please inquire of us openly and frankly. We encourage you to discuss with a LWG representative any problems that you may have with our services, employees, accounting department, secretarial staff or other matters that may arise in connection with our services. If, after giving LWG thirty (30) days notice of any complaint, you remain unsatisfied with LWG's response to your complaint, you hereby agree to mediate and/or arbitrate any complaint against LWG prior to the initiation of any public or private complaints or claims of any kind against LWG or any of its employees, agents, attorneys or staff. The parties agree to submit all disputes arising under or related to this Agreement to binding arbitration according to the then prevailing rules and procedures of the American Arbitration Association. Texas law will govern the rights and obligations of the parties with respect to the matters in controversy. The arbitrator will allocate all costs and fees attributable to the arbitration between to the parties. The

arbitrator's award will be final and binding and judgment may be entered in any court of competent jurisdiction.

Dkt. 52, Declaration of Lloyd E. Ward, Exhibit A, ¶ 11.

With regard to personal jurisdiction, Johnson-Peredo states that she is a resident of Pennsylvania.  Complaint, ¶ 18.  Johnson-Peredo alleges that the Court has personal jurisdiction over the Ward Defendants as follows:

> 15. This Court has personal jurisdiction over each of Lloyd Ward Defendants pursuant to 18 U.S.C. § 1965(b) since Lloyd Ward Defendants participated in the conduct of the Meracord Enterprise and the claims against Lloyd Ward Defendants arise, in part, out of their business transactions with Meracord, a Washington-based company. This Court also has jurisdiction over Lloyd Ward Defendants pursuant to RCW § 19.86.160, since Lloyd Ward Defendants together engaged in violations of RCW § 19.86 which had an impact on the state of Washington. Specifically, Lloyd Ward Defendants have actively participated in the Meracord Enterprise and conspired with Meracord with the intent and effect of defrauding consumers nationwide, including hundreds if not thousands of consumers located in this district.
> 16. In addition, this Court has personal jurisdiction over Lloyd Ward Defendants because Lloyd Ward Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. Cal. 2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).
> 17. Lloyd Ward Defendants intentionally and knowingly solicited Washington State residents for their wholly fraudulent debt settlement services by means of the internet, telephone solicitations across state lines, and emails. For example, Lloyd Ward Defendants solicited Washington State residents Sherrie Kay Gordon and Debbie Kay Miller for their wholly fraudulent debt settlement services. These transactions are the subject of another lawsuit currently pending in Washington State Superior Court. *Gordon, et al. v. Lloyd Ward, et al.*, No 12201551-6 (Filed April 23, 2012).

Complaint.

## III. DISCUSSION

The Ward Defendants move to dismiss for lack of personal jurisdiction, to compel arbitration, or to transfer venue. The Court considers all three issues below.

**A.  Personal Jurisdiction**

The Ward Defendants argue that personal jurisdiction over them is lacking. Dkt. 51 at 2. They cite *Clader v. Jones*, 465 U.S. 783, 790 (1984), for the proposition that "[e]ach defendant's contacts with the forum State must be assessed individually." The RICO statute, however, provides that:

> in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b). The purpose of the "ends of justice" provision is "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). In order to demonstrate that a Court has jurisdiction over defendants under § 1965(b), the plaintiff must establish (1) that they have sufficiently alleged a multidistrict conspiracy that encompasses the defendants; (2) that the court has personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy; and (3) that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. *Id.* at 539.

In this case, Plaintiffs contend that the Court has personal jurisdiction over the Ward Defendants under the Ninth Circuit's interpretation of § 1965(b). The Ward

Defendants fail to address Plaintiffs' arguments or the RICO statute in their reply brief and concentrate on individual contacts, Washington case law, and traditional notions of fair play and justice. *See* Dkt. 62 at 1–6. While the Ward Defendants' arguments have some merit, application of the binding RICO case law confers personal jurisdiction over some of the Ward Defendants. First, it is uncontested that Meracord's principal place of business is Tacoma, Washington. Therefore, the Court has jurisdiction over at least one of the participants in the alleged multidistrict conspiracy.

Second, Plaintiffs must show that no other district will have jurisdiction over all the alleged co-conspirators. Meracord is a Delaware corporation with its principal place of business in this district. While Meracord may be subject to jurisdiction in Delaware, Plaintiffs correctly state that there is no evidence in the record that shows that Meracord is subject to jurisdiction in Texas, the district where the Ward Defendants are subject to jurisdiction. Dkt. 58 at 16. Therefore, Plaintiffs have met their burden on this element.

Third, the parties dispute whether Plaintiffs have sufficiently plead a multi-district conspiracy involving all of the Ward Defendants. On this issue, the Ninth Circuit has held that, under RICO, "an associated-in-fact enterprise . . . does not require any particular organizational structure." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). Under this structure, the Court will address each Ward Defendant because the Plaintiffs have failed to allege facts involving all the Ward Defendants. With respect to members of the enterprise, the Court finds that Johnson-Peredo has sufficiently alleged an associated-in-fact enterprise involving Meracord, LWA, LWP, and LWP2. The Client Services Agreement was made between LWG and Johnson-Peredo. Meracord deducted

money from Johnson-Peredo's bank account. LWA was Johnson-Peredo's attorney. LWG2 was supposed to help Johnson-Peredo negotiate with creditors. Dkt. 59, Declaration of MJP, ¶¶ 18, 19, 24. Therefore, the Court denies the Ward Defendants' motion as these entities because there are sufficient allegations and facts to show that they associated.

Johnson-Peredo has failed to show that any other Ward Defendant was involved in the alleged conspiracy to negotiate her debt. With regard to Lloyd and Amanda Ward, individually, Plaintiffs fail to allege or show that either of these individuals acted outside the scope of their employment or position as a corporate officer. While they may possibly be included as employees or officers, there is nothing in the record to assert jurisdiction over Lloyd or Amanda on an individual basis. Therefore, the Court grants the Ward Defendants' motion to dismiss Plaintiffs' RICO claims against Lloyd and Amanda Ward individually.

With regard to Settlement Compliance Commission, Inc., Plaintiffs fail to assert any facts that give rise to its involvement in a conspiracy. Plaintiffs only allege that this company shares the same corporate address as LWA. Complaint, ¶ 33. The sharing of an address in Texas does not confer jurisdiction in this venue under any theory advanced by Plaintiffs. Therefore, the Court grants the Ward Defendants' motion as to Settlement Compliance Commission, Inc. and Plaintiffs' RICO claims against this entity are dismissed for lack of personal jurisdiction.

With regard to Plaintiffs' arguments under Washington's long arm statute, Plaintiffs fail to meet their burden to show either general or specific jurisdiction over

Lloyd Ward, Amanda Ward, or Settlement Compliance Commission, Inc. Plaintiffs fail to show substantial and continuous contacts. *MBM Fisheries, Inc. v. Bollinger Shipyard, Inc.*, 60 Wn. App. 414, 419–20 (1991). Plaintiffs also fail to show specific contacts. *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 596-97 (1993). Therefore, the Court grants the Ward Defendants' motion and dismisses the remainder of Plaintiffs' claims against Lloyd Ward, Amanda Ward, and Settlement Compliance Commission, Inc.

**B.  Arbitration**

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[W]hen a plaintiff argues that an arbitration clause, standing alone, is unenforceable−for reasons independent of any reasons the remainder of the contract might be invalid−that is a question to be decided by the court." *Bridge Fund CapitalCorp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010).

In this case, it is undisputed that the Client Services Agreement contains an arbitration clause. Johnson-Peredo alleges that the clause is procedurally and substantively unenforceable. Complaint, ¶ 209. The Ward Defendants argue that this question should be considered during arbitration and not by the Court. Dkt. 62 at 6–8. Johnson-Peredo, however, admits that she orally entered into a contract with LWA and that her signature was esigned to the CSA before she was informed of certain clauses

1  within the CSA, including the arbitration clause.  In other words, Johnson-Peredo has
2  presented a circumstance in which the arbitration clause is unenforceable for a reason
3  independent of the contract between her and LWA.  Therefore, the question of the
4  validity of the arbitration clause is properly before the Court.
5      "[I]n assessing whether an arbitration agreement or clause is enforceable, the
6  Court should apply ordinary state-law principles that govern the formation of contracts."
7  *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (internal citations
8  omitted), overruled on another point in *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947,
9  960 (9th Cir. 2012).  Procedural unconscionability relates "to impropriety during the
10 process of forming a contract."  *Nelson v.McGoldrick*, 127 Wn.2d 124, 131 (1995).  It
11 involves "blatant unfairness in the bargaining process and a lack of meaningful choice."
12 *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 518 (2009).  "Procedural
13 unconscionability is determined in light of the totality of the circumstances, including (1)
14 the manner in which the parties entered into the contract, (2) whether the parties had a
15 reasonable opportunity to understand the terms, and (3) whether the terms were hidden in
16 a maze of fine print."  *Id*., at 518-519 (internal quotations and citations omitted).  These
17 factors should "not be applied mechanically without regard to whether in truth a
18 meaningful choice existed."  *Id*., at 519.
19     The manner in which the Ward Defendants attained Johnson-Peredo's agreement
20 to this arbitration clause was unconscionable.  Johnson-Peredo declares that her name
21 was esigned to the agreement before she was ever presented the agreement to review.
22 Johnson-Peredo was given no opportunity to understand the clause, let alone a reasonable

1  opportunity. Moreover, attorneys have additional ethical responsibilities when entering
2  into fee agreements with clients (*see* TX Eth. Op. 586 (Oct. 1, 2008)) and LWA fails to
3  show that it met these responsibilities while entering into the agreement with Johnson-
4  Peredo. Therefore, the Court finds that Johnson-Peredo was not given a meaningful
5  choice as to the arbitration clause.

6  The Ward Defendants argue that, even if Johnson-Peredo was not given an
7  opportunity to view the CSA before she signed it, the arbitration clause should be
8  enforced because she performed under the agreement for a number of months. Dkt. 62 at
9  7–8. The cases cited, however, do not stand for the proposition that consent obtained via
10 procedural unconscionable circumstances may be cured by performance. *Michak v.*
11 *Transnation Title Ins. Co.*, 148 Wn.2d 788, 799 (2003) (individual initialed changes to
12 legal description of property); *Washington Federal Sav. & Loan Ass'n v. Alsager*, 165
13 Wn. App. 10, 14 (2011) ("Where a party has an opportunity to examine the contract
14 **prior** to his agreement . . . he may not claim ignorance of the contract's terms.)
15 (emphasis added). Therefore, the Court denies the remaining Ward Defendants' motion
16 to compel arbitration.

17 **C.   Venue**

18 The Ward Defendants argue that venue in this district is improper. Dkt. 51 at 20.
19 Johnson-Peredo argues that venue is proper in this district "because the events that gave
20 rise to the claims occurred in substantial part in this judicial district." Complaint, ¶ 41.
21 The Court agrees. Johnson-Peredo alleges that little if any debt settlement services
22 occurred, yet Meracord collected monthly payments from Johnson-Peredo. Meracord's

1  principal place of business is Tacoma, which means that the majority of activities that

2  give rise to the causes of actions occurred in Tacoma. Therefore, the Court denies the

3  Ward Defendants' motion to dismiss or transfer venue.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Ward Defendants' motion to dismiss (Dkt. 51) is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 31st day of January, 2013.

BENJAMIN H. SETTLE
United States District Judge