UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DINAH CANADA, et al.,<br><br>                 Plaintiffs,<br><br>     v.<br><br>MERACORD, LLC, et al.,<br><br>                 Defendants. | CASE NO. C12-5657 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants Lloyd E. Ward, Amanda Glen Ward, Lloyd Ward, P.C., Lloyd Ward & Associates, P.C. ("LWA"), The Lloyd Ward Group, P.C. ("LWG"), Ward Holdings, Inc., and Settlement Compliance Commission, Inc.'s (collectively "Ward Defendants") motion to dismiss (Dkt. 51). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On July 24, 2012, Plaintiffs Marie Johnson-Peredo ("Johnson-Peredo"), Dinah Canada ("Canada"), and Robert Hewson ("Hewson") (collectively "Plaintiffs") filed a

class action complaint against numerous defendants.  Dkt. 1.  On October 29, 2012,

Plaintiffs filed an amended class action complaint against the Ward Defendants and

Meracord, LLC ("Meracord"), Linda Remsberg, and Charles Remsberg alleging

violations of (1) the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C.

§§ 1961–1968 ("RICO"); (2) the Washington Debt Adjusting Act, RCW Chapter 18.28

("DAA"); (3) the Washington Consumer Protection Act, RCW Chapter 19.86 ("CPA");

(4) aiding and abetting the commission of unfair and deceptive business conduct; (5)

breach of fiduciary duty; and (6) unjust enrichment.  Dkt. 41.

On November 15, 2012, the Ward Defendants filed a motion to dismiss (Dkt. 51)

and the Meracord Defendants filed a motion to stay or dismiss (Dkt. 54).  On December

10, 2012, Plaintiffs responded.  Dkts. 56 & 58.  On December 14, 2012, Defendants

replied.  Dkts. 62 & 63.

## II. FACTUAL BACKGROUND

Plaintiffs Canada and Hewson allege that they signed "up for the debt settlement

services of Meracord" and one of Meracord's "front-end" debt settlement companies

("Front DSCs").  Complaint, ¶¶ 18 & 19.  Meracord, formerly Noteworld, LLC, is a

Delaware limited liability company with its principal place of business in Tacoma,

Washington.  *Id*. ¶ 21.  Plaintiffs allege that "Meracord has conspired and/or currently

conspires with scores (if not hundreds) of [Front DSCs], who together with Meracord

compose the Meracord Enterprise."  *Id*. ¶ 23.

Johnson-Peredo declares that she entered her contact information into a form on a

debt settlement website and was contacted shortly thereafter by a representative of LWA,

Rona Favreau.  Dkt. 59, Declaration of Marie Johnson-Peredo, ¶¶ 7–8.  Johnson-Peredo orally agreed to retain LWA to settle her debt.  ¶ 15.  Ms. Favreau esigned Johnson-Peredo's signature to a Client Services Agreement ("CSA").  *Id.* ¶¶ 15, 18.  A few days later, Johnson-Peredo received a "Debt Relief Package" by mail that contained various document, including the esigned CSA.  *Id.* ¶ 18.

Between September 2010 and October 2011, Noteworld, currently Meracord, deducted $5,633.42 from Johnson-Peredo's bank account in monthly payments.  *Id.* ¶ 24. Johnson-Peredo contends that, even though she made payments to Noteworld, none of her debt was settled.  *Id.*

With regard to arbitration, the CSA agreement contains numerous clauses including a clause regarding arbitration.  Specifically, the CSA provides as follows:

> **11. Arbitration of Dispute**: In the event of a dispute regarding LWG's representation of Client's claims and defenses, or monies owed by Client to LWG, Client hereby agrees to notify LWG in writing of any such complaint so that LWG can attempt to reasonably address and, if appropriate, remedy the complaint to Client's complete satisfaction. LWG representatives will be happy to discuss policies and procedures set forth herein with you at any time. If you have any questions, please inquire of us openly and frankly. We encourage you to discuss with a LWG representative any problems that you may have with our services, employees, accounting department, secretarial staff or other matters that may arise in connection with our services. If, after giving LWG thirty (30) days notice of any complaint, you remain unsatisfied with LWG's response to your complaint, you hereby agree to mediate and/or arbitrate any complaint against LWG prior to the initiation of any public or private complaints or claims of any kind against LWG or any of its employees, agents, attorneys or staff. The parties agree to submit all disputes arising under or related to this Agreement to binding arbitration according to the then prevailing rules and procedures of the American Arbitration Association. Texas law will govern the rights and obligations of the parties with respect to the matters in controversy. The arbitrator will allocate all costs and fees attributable to the arbitration between to the parties. The

ORDER - 3

1    arbitrator's award will be final and binding and judgment may be entered in
     any court of competent jurisdiction.
2

     Dkt. 52, Declaration of Lloyd E. Ward, Exhibit A, ¶ 11.
3

4        With regard to personal jurisdiction, Johnson-Peredo states that she is a resident of

   Pennsylvania.  Complaint, ¶ 18.  Johnson-Peredo alleges that the Court has personal
5

   jurisdiction over the Ward Defendants as follows:
6

7            15. This Court has personal jurisdiction over each of Lloyd Ward
         Defendants pursuant to 18 U.S.C. § 1965(b) since Lloyd Ward Defendants
8        participated in the conduct of the Meracord Enterprise and the claims
         against Lloyd Ward Defendants arise, in part, out of their business
9        transactions with Meracord, a Washington-based company. This Court also
         has jurisdiction over Lloyd Ward Defendants pursuant to RCW §
10       19.86.160, since Lloyd Ward Defendants together engaged in violations of
         RCW § 19.86 which had an impact on the state of Washington.
11       Specifically, Lloyd Ward Defendants have actively participated in the
         Meracord Enterprise and conspired with Meracord with the intent and
12       effect of defrauding consumers nationwide, including hundreds if not
         thousands of consumers located in this district.
13           16. In addition, this Court has personal jurisdiction over Lloyd Ward
         Defendants because Lloyd Ward Defendants "purposefully avail[ed]
14       [themselves] of the privilege of conducting activities within the forum
         State, thus invoking the benefits and protections of its laws."
15       *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir.
         Cal. 2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228,
16       2 L. Ed. 2d 1283 (1958)).
             17. Lloyd Ward Defendants intentionally and knowingly solicited
17       Washington State residents for their wholly fraudulent debt settlement
         services by means of the internet, telephone solicitations across state lines,
18       and emails. For example, Lloyd Ward Defendants solicited Washington
         State residents Sherrie Kay Gordon and Debbie Kay Miller for their wholly
19       fraudulent debt settlement services. These transactions are the subject of
         another lawsuit currently pending in Washington State Superior Court.
20       *Gordon, et al. v. Lloyd Ward, et al.*, No 12201551-6 (Filed April 23, 2012).

21   Complaint.

22

ORDER - 4

**III. DISCUSSION**

The Ward Defendants move to dismiss for lack of personal jurisdiction, to compel arbitration, or to transfer venue. The Court considers all three issues below.

**A.     Personal Jurisdiction**

The Ward Defendants argue that personal jurisdiction over them is lacking. Dkt. 51 at 2. They cite *Clader v. Jones*, 465 U.S. 783, 790 (1984), for the proposition that "[e]ach defendant's contacts with the forum State must be assessed individually." The RICO statute, however, provides that:

> in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b). The purpose of the "ends of justice" provision is "to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). In order to demonstrate that a Court has jurisdiction over defendants under § 1965(b), the plaintiff must establish (1) that they have sufficiently alleged a multidistrict conspiracy that encompasses the defendants; (2) that the court has personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy; and (3) that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. *Id.* at 539.

In this case, Plaintiffs contend that the Court has personal jurisdiction over the Ward Defendants under the Ninth Circuit's interpretation of § 1965(b). The Ward

1   Defendants fail to address Plaintiffs' arguments or the RICO statute in their reply brief

2   and concentrate on individual contacts, Washington case law, and traditional notions of

3   fair play and justice. *See* Dkt. 62 at 1–6. While the Ward Defendants' arguments have

4   some merit, application of the binding RICO case law confers personal jurisdiction over

5   some of the Ward Defendants. First, it is uncontested that Meracord's principal place of

6   business is Tacoma, Washington. Therefore, the Court has jurisdiction over at least one

7   of the participants in the alleged multidistrict conspiracy.

8          Second, Plaintiffs must show that no other district will have jurisdiction over all

9   the alleged co-conspirators. Meracord is a Delaware corporation with its principal place

10  of business in this district. While Meracord may be subject to jurisdiction in Delaware,

11  Plaintiffs correctly state that there is no evidence in the record that shows that Meracord

12  is subject to jurisdiction in Texas, the district where the Ward Defendants are subject to

13  jurisdiction. Dkt. 58 at 16. Therefore, Plaintiffs have met their burden on this element.

14         Third, the parties dispute whether Plaintiffs have sufficiently plead a multi-district

15  conspiracy involving all of the Ward Defendants. On this issue, the Ninth Circuit has

16  held that, under RICO, "an associated-in-fact enterprise . . . does not require any

17  particular organizational structure." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th

18  Cir. 2007). Under this structure, the Court will address each Ward Defendant because the

19  Plaintiffs have failed to allege facts involving all the Ward Defendants. With respect to

20  members of the enterprise, the Court finds that Johnson-Peredo has sufficiently alleged

21  an associated-in-fact enterprise involving Meracord, LWA, LWP, and LWP2. The Client

22  Services Agreement was made between LWG and Johnson-Peredo. Meracord deducted

money from Johnson-Peredo's bank account.  LWA was Johnson-Peredo's attorney.

LWG2 was supposed to help Johnson-Peredo negotiate with creditors.  Dkt. 59,

Declaration of MJP, ¶¶ 18, 19, 24.  Therefore, the Court denies the Ward Defendants'

motion as these entities because there are sufficient allegations and facts to show that

they associated.

Johnson-Peredo has failed to show that any other Ward Defendant was involved in

the alleged conspiracy to negotiate her debt.  With regard to Lloyd and Amanda Ward,

individually, Plaintiffs fail to allege or show that either of these individuals acted outside

the scope of their employment or position as a corporate officer.  While they may

possibly be included as employees or officers, there is nothing in the record to assert

jurisdiction over Lloyd or Amanda on an individual basis.  Therefore, the Court grants

the Ward Defendants' motion to dismiss Plaintiffs' RICO claims against Lloyd and

Amanda Ward individually.

With regard to Settlement Compliance Commission, Inc., Plaintiffs fail to assert

any facts that give rise to its involvement in a conspiracy.  Plaintiffs only allege that this

company shares the same corporate address as LWA.  Complaint, ¶ 33.  The sharing of

an address in Texas does not confer jurisdiction in this venue under any theory advanced

by Plaintiffs.  Therefore, the Court grants the Ward Defendants' motion as to Settlement

Compliance Commission, Inc. and Plaintiffs' RICO claims against this entity are

dismissed for lack of personal jurisdiction.

With regard to Plaintiffs' arguments under Washington's long arm statute,

Plaintiffs fail to meet their burden to show either general or specific jurisdiction over

ORDER - 7

1   Lloyd Ward, Amanda Ward, or Settlement Compliance Commission, Inc.  Plaintiffs fail

2   to show substantial and continuous contacts.  *MBM Fisheries, Inc. v. Bollinger Shipyard,*

3   *Inc.*, 60 Wn. App. 414, 419–20 (1991).  Plaintiffs also fail to show specific contacts.

4   *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 596-97 (1993).  Therefore,

5   the Court grants the Ward Defendants' motion and dismisses the remainder of Plaintiffs'

6   claims against Lloyd Ward, Amanda Ward, and Settlement Compliance Commission,

7   Inc.

8   **B.    Arbitration**

9        The Federal Arbitration Act ("FAA") provides that "an agreement in writing to

10  submit to arbitration an existing controversy arising out of such a contract, transaction, or

11  refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

12  law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "[W]hen a plaintiff

13  argues that an arbitration clause, standing alone, is unenforceable−for reasons

14  independent of any reasons the remainder of the contract might be invalid−that is a

15  question to be decided by the court.*"  Bridge Fund CapitalCorp. v. Fastbucks Franchise*

16  *Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010).

17       In this case, it is undisputed that the Client Services Agreement contains an

18  arbitration clause.  Johnson-Peredo alleges that the clause is procedurally and

19  substantively unenforceable.  Complaint, ¶ 209.  The Ward Defendants argue that this

20  question should be considered during arbitration and not by the Court.  Dkt. 62 at 6–8.

21  Johnson-Peredo, however, admits that she orally entered into a contract with LWA and

22  that her signature was esigned to the CSA before she was informed of certain clauses

1   within the CSA, including the arbitration clause.  In other words, Johnson-Peredo has

2   presented a circumstance in which the arbitration clause is unenforceable for a reason

3   independent of the contract between her and LWA.  Therefore, the question of the

4   validity of the arbitration clause is properly before the Court.

5          "[I]n assessing whether an arbitration agreement or clause is enforceable, the

6   Court should apply ordinary state-law principles that govern the formation of contracts."

7   *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (internal citations

8   omitted), overruled on another point in *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947,

9   960 (9th Cir. 2012).  Procedural unconscionability relates "to impropriety during the

10  process of forming a contract."  *Nelson v.McGoldrick*, 127 Wn.2d 124, 131 (1995).  It

11  involves "blatant unfairness in the bargaining process and a lack of meaningful choice."

12  *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 518 (2009).  "Procedural

13  unconscionability is determined in light of the totality of the circumstances, including (1)

14  the manner in which the parties entered into the contract, (2) whether the parties had a

15  reasonable opportunity to understand the terms, and (3) whether the terms were hidden in

16  a maze of fine print."  *Id*., at 518-519 (internal quotations and citations omitted).  These

17  factors should "not be applied mechanically without regard to whether in truth a

18  meaningful choice existed."  *Id*., at 519.

19         The manner in which the Ward Defendants attained Johnson-Peredo's agreement

20  to this arbitration clause was unconscionable.  Johnson-Peredo declares that her name

21  was esigned to the agreement before she was ever presented the agreement to review.

22  Johnson-Peredo was given no opportunity to understand the clause, let alone a reasonable

1    opportunity.  Moreover, attorneys have additional ethical responsibilities when entering

2    into fee agreements with clients (*see* TX Eth. Op. 586 (Oct. 1, 2008)) and LWA fails to

3    show that it met these responsibilities while entering into the agreement with Johnson-

4    Peredo.  Therefore, the Court finds that Johnson-Peredo was not given a meaningful

5    choice as to the arbitration clause.

6           The Ward Defendants argue that, even if Johnson-Peredo was not given an

7    opportunity to view the CSA before she signed it, the arbitration clause should be

8    enforced because she performed under the agreement for a number of months.  Dkt. 62 at

9    7–8.  The cases cited, however, do not stand for the proposition that consent obtained via

10   procedural unconscionable circumstances may be cured by performance.  *Michak v.*

11   *Transnation Title Ins. Co.*, 148 Wn.2d 788, 799 (2003) (individual initialed changes to

12   legal description of property); *Washington Federal Sav. & Loan Ass'n v. Alsager*, 165

13   Wn. App. 10, 14 (2011) ("Where a party has an opportunity to examine the contract

14   **prior** to his agreement . . . he may not claim ignorance of the contract's terms.)

15   (emphasis added).  Therefore, the Court denies the remaining Ward Defendants' motion

16   to compel arbitration.

17   **C.    Venue**

18          The Ward Defendants argue that venue in this district is improper.  Dkt. 51 at 20.

19   Johnson-Peredo argues that venue is proper in this district "because the events that gave

20   rise to the claims occurred in substantial part in this judicial district."  Complaint, ¶ 41.

21   The Court agrees.  Johnson-Peredo alleges that little if any debt settlement services

22   occurred, yet Meracord collected monthly payments from Johnson-Peredo.  Meracord's

1   principal place of business is Tacoma, which means that the majority of activities that

2   give rise to the causes of actions occurred in Tacoma.  Therefore, the Court denies the

3   Ward Defendants' motion to dismiss or transfer venue.

4   **IV. ORDER**

5        Therefore, it is hereby **ORDERED** that the Ward Defendants' motion to dismiss

6   (Dkt. 51) is **GRANTED in part** and **DENIED in part** as stated herein.

7        Dated this 31st day of January, 2013.

8

9

10  BENJAMIN H. SETTLE
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22