HONORABLE BENJAMIN H. SETTLE

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| AMRISH RAJAGOPALAN, MARIE JOHNSON-PEREDO, ROBERT HEWSON and KAREN HEA, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>           v.<br><br>MERACORD, LLC; LINDA REMSBERG and CHARLES REMSBERG, individually and on behalf of the marital community,<br><br>             Defendants. | Case No. 3:12-CV-05657-BHS<br><br>DEFENDANT MERACORD, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>**NOTED FOR:**<br>**Friday, October 10, 2014**<br>**ORAL ARGUMENT REQUESTED** |

19

20

21

22

23

24

25

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.     INTRODUCTION ................................................................................... 1

II.     RELEVANT FACTS ............................................................................ 3

      A.     Background and Business of Meracord ................................. 3

      B.     Debt Relief Service Providers and Their Separate Contracts with Customers....... 4

      C.     Meracord's Role and Separate Agreements with Plaintiffs.................... 6

      D.     Meracord's Class Settlement for Washington Residents and Withdrawal ............. 7

      E.     Meracord is Now Defunct, Has Ceased Operating and Has Dwindling Assets, But is Able to Respond to the Named Plaintiffs' Claims ..................................... 9

III.     ARGUMENT....................................................................................... 10

      A.     Class Certification is Improper Because Plaintiffs Do Not Meet the Requirements Under Rule 23(a) ............................................................... 10

          1.     There are not questions of fact or law common to the class.................... 10

          2.     The named Plaintiffs' claims are not typical of the claims of proposed class........................................................................... 15

      B.     Certifying the Class under Rule 23(b)(1)(B) is Improper Because There are Not Any Competing Interests in a Limited Fund Other than the Named Plaintiffs .... 17

      C.     Certification Under Rule 23(b)(3) is Improper Because a Class Action is Not Superior to Other Available Methods for Handling the Controversy.................. 19

          1.     A class action is not superior because class members will not recover any amount.................................................................... 19

          2.     A class action is not superior because the U.S. Consumer Financial Protection Bureau's Civil Penalty Fund is an alternative remedy which is better than class treatment ................................................. 20

          3.     Plaintiffs desire to pursue Meracord's sureties in future lawsuits does not justify class certification in this case. .................................. 22

D.   Certifying the Class under Rule 23(b)(3) is Improper Because Common Questions Do Not Predominate Over Questions Affecting Individual Class Members ........................................................................................... 22

IV.   CONCLUSION ........................................................................................... 24

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF AUTHORITIES

### Table of Cases

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)................................. 23

*Califano v. Yamasaki*,
442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)................................. 10

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)................................. 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. __, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)................................. 10

**Federal Cases**

*In re Aqua Dots Prods. Liab. Litig.*,
654 F.3d 748 (7th Cir. 2011) ................................. 22

*Berley v. Dreyfus & Co.*,
43 F.R.D. 397 (S.D.N.Y. 1967) ................................. 21

*Brewer v. Dodson Aviation*,
447 F. Supp. 2d 1166 (W.D. Wash. 2006)................................. 12

*Canada v. Meracord, LLC*,
2013 U.S. Dist. LEXIS 13786 (W.D. Wash. Jan. 31, 2013)................................. 5

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D. N.J. 1998)................................. 21

*Connelly v. Hilton Grand Vacations Co., LLC*,
294 F.R.D. 574 (S.D. Cal. 2013) ................................. 22, 24

*Duncan v. Northwest Airlines, Inc.*,
203 F.R.D. 601 (W.D. Wash. 2001) ................................. 23

*In re Hotel Charges*,
500 F.2d 86 (9th Cir. 1974) ................................. 20

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - iii

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*Keithly v. Intelius, Inc.*,
    2011 U.S. Dist. LEXIS 79733 (W.D. Wash. May 17, 2011)..............................................12

*Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*,
    211 F.R.D. 228 (S.D.N.Y. 2002) ...............................................................................11

*Morgan v. Markerdowne Corp.*,
    201 F.R.D. 341 (D. N.J. 2001)..................................................................................11

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) ..............................................................................18

*Pennsylvania v. Budget Fuel Co.*,
    122 F.R.D. 184 (E.D. Pa. 1988)............................................................................2, 21

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    214 F.R.D. 614 (W.D. Wash. 2003) ....................................................................1, 19-21

*Rajagopalan v. NoteWorld, LLC*,
    2012 U.S. Dist. LEXS 29849 (W.D. Wash. Mar. 6, 2012).........................2, 4, 5, 14-16, 23

*Rutledge v. Electric Hose & Rubber Co.*,
    511 F.2d 668 (9th Cir. 1975) ..................................................................................19

*Southwell v. Mortgage Invs. Corp. of Ohio, Inc.*,
    2014 U.S. Dist. LEXIS 112362 (W.D. Wash. Aug. 12, 2014) .....................10, 11, 19, 23

*In re Telectronics Pacing Sys., Inc.*,
    221 F.3d 870 (6th Cir. 2000) ..................................................................................18

*Thompson v. American Tobacco Co.*,
    189 F.R.D. 544 (D. Minn. 1999) ..............................................................................20

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ..............................................................................21

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...........................................................................12, 22

**Washington State Cases**

*Carlsen v. Global Client Solutions, LLC*,
    171 Wn.2d 486, 256 P.3d 321 (2011).........................................................................8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*Johnson v. Spider Staging Corp.*,
    87 Wn.2d 577, 555 P.2d 997 (1976) ........................................................................ 13-14

*Schnall v. AT&T Wireless Servs., Inc.*,
    171 Wn.2d 260, 271, 259 P.3d 159 (2011) ................................................................. 14

*Schnall v. AT&T Wireless Servs., Inc.*,
    139 Wn. App. 280, 161 P.3d 395 (2007) ................................................................... 12

**Statutes**

Fla. Stat. § 817.802(1) ................................................................................................ 13

Fla. Stat. § 817.803(1) ................................................................................................ 13

RCW 18.28 ............................................................................................................ *passim*

RCW 18.28.010 ................................................................................. 8, 12, 13, 17, 24

RCW 18.28.080 ................................................................................................... 23, 24

RCW 18.28.110(4) ..................................................................................................... 11

N.C. Gen. Stat. § 14-423 ........................................................................................... 12

2014 Pa. Laws 118, § 2103(b) ................................................................................... 13

2005 Tex. Gen. Laws 336, § 394.210 ........................................................................ 13

12 U.S.C. § 5497(d) ..................................................................................................... 1

31 U.S.C. § 5312(a)(2)(R) ........................................................................................... 8

2012 Wash. Sess. Laws ch. 56 ......................................................................... 8, 12, 17

Wis. Stat. § 218.02 ..................................................................................................... 13

Wyo. Stat. § 33-14-102 .............................................................................................. 13

**Rules and Regulations**

16 C.F.R. §310.4(a)(5)(i) .............................................................................................. 6

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 10

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Fed. R. Civ. P. 23(b)(1)(B) .................................................................................... 10, 18

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 1, 19, 22

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - vi

# I.  INTRODUCTION

Plaintiffs Amrish Rajagopalan, Robert Hewson, Marie Johnson-Peredo and Karen Hea (collectively, "Plaintiffs") seek certification of a nationwide class against defendant Meracord, LLC ("Meracord") of over 200,000 former customers for claims they allege exceed $2.0 billion. Simultaneously, they concede that Meracord's sole asset is the remnants of a wasting insurance policy consisting of a few hundred thousand dollars.  Even if Plaintiffs ultimately succeeded in proving their claims, the class would recover nothing.  Converting this case to a class action makes no sense, and is not "superior to other available methods."  *See* Fed. R. Civ. P. 23(b)(3).

In fact, certifying a nationwide class would create the very problem of a "limited fund" Plaintiffs argue a class action would resolve.  The only existing claims against Meracord are those by the four Plaintiffs and one other person, represented by the same counsel in another lawsuit.[1]  The value of each claim averages about $15,000 and Meracord could likely satisfy the claims even in its current financial condition.  Because Meracord ceased operating over a year ago and stopped servicing customers of debt relief service providers ("DRSP") even earlier, the prospect that "hundreds of thousands" of customers would suddenly emerge and make competing claims against Meracord's remaining assets is pure speculation.  Rather, certifying a class "would merely serve to create lawsuits where none previously existed."  *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003).

A superior method of recovery already is available to the proposed class by virtue of the U.S. Consumer Financial Protection Bureau's ("CFPB") Civil Penalty Fund.  Over a year ago, Meracord entered into a Consent Decree, approved by this Court, where it paid $1.376 million to the CFPB.[2]  The CFPB deposited those funds, along with other monies, into a Civil Penalty Fund administered under the "Consumer Financial Protection Act," 12 U.S.C. § 5497(d).  That fund contains over $119 million, and the CFPB already has allocated millions to pay individuals

---

[1]  *See Anderson v. Meracord, LLC*, No. 13-cv-2470 (D. Az. 2013).  That case is stayed.

[2]  Declaration of Randall Thomsen in Supp. of Oppos. to Plfs.' Mot. Class Certification ["Thomsen Decl."] Ex. 1.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   allegedly harmed by Meracord.  It makes no sense to certify a class of customers (and waste this

2   Court's resources) with unasserted claims to obtain <u>no</u> recovery when a superior method already

3   exists to resolve those claims which <u>would</u> allow for a recovery.  *See, e.g., Pennsylvania v.*

4   *Budget Fuel Co.*, 122 F.R.D. 184, 186 (E.D. Pa. 1988).

5         Regardless, Plaintiffs' claims lack the factual and legal commonality necessary to certify

6   a class.  Plaintiffs premise their claims on the bald assertion that over 300 hundred different

7   DRSPs made false representations to hundreds of thousands of customers, on which those

8   customers relied in entering contracts for purposes of settling their debt.  The customers then

9   separately contracted with Meracord for payment processing services and now allege that

10  Meracord withdrew fees from their accounts as they authorized, but in violation of Washington

11  law as part of a "conspiracy" with the DRSPs.

12        The facts underlying Plaintiffs claims reveal that there is no commonality – they depend

13  on allegedly fraudulent representations made by hundreds of different DRSPs and their legion of

14  representatives.  In turn, Plaintiffs allege hundreds of thousands of customers relied on those

15  false representations to independently contract with Meracord, all while being oblivious to the

16  actual contract terms.  Proving these claims is a highly fact-specific inquiry that will vary as to

17  specific representations made by each DRSP's representative to each customer, including what

18  representations that customer received, by whom, and in what form, and the customer's review

19  and knowledge of the contract terms, as well as whether that particular DRSP "conspired" with

20  Meracord.  *See, e.g. Rajagopalan v. NoteWorld, LLC*, 2012 U.S. Dist. LEXIS 29849 at *2-3

21  (W.D. Wash. Mar. 6, 2012) (examining plaintiff's interactions with specific DRSP, including

22  representations made and his reliance on them).

23        Likewise, there is no common question of law.  Plaintiffs hinge commonality on the

24  assumption that Washington's Debt Adjusting Act, RCW 18.28 *et seq.* ("DAA"), applies to all

25  customers regardless of their residency and their contracts with the DRSP, almost all of which

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 2

contain choice of law provisions.  This Court must engage in a choice of law analysis to decide

which jurisdiction has the most "significant relationship" to this case, which will require the

Court to examine the laws of the state of each customer who contracted with each DRSP, the

laws of the state applicable to the DRSP, and determine whether those jurisdictions (or a

combination of the two, sometimes three) have a relationship greater than Washington's.  Each

state has differing laws governing debt adjusting, some of which expressly exempt the services

at issue, and some of which do not.  Likewise, some states limit fees that may be charged in

connection with debt adjustment and some do not.  Because <u>actual</u> Meracord accounts with

Washington residents comprise only a fraction (2.47%) of all accounts at issue and even smaller

amount of fees (0.0079%),[3] the Court will almost certainly determine that other states have a

much more "significant relationship" to the claims of the putative class.

Plaintiffs have failed to meet their burden and their motion for class certification should

be denied.[4]

## II.  RELEVANT FACTS

Plaintiffs sole interest in certifying a class is to achieve a pyrrhic victory against

Meracord, which will ultimately result in no recovery for class members.  Meracord is a defunct

company that, over the past two years, has ceased doing business and laid off all of its former

200+ employees.[5]  It exists now solely because of its status as a defendant in this litigation.[6]

A.      **Background and Business of Meracord.**

Before it ceased operating, Meracord acted as a nationwide payment processor whereby

it received periodic payments from customers and processed those payments by ensuring that

---

[3]  *See* Declaration of Brian Zinn ["Zinn Decl."] ¶¶ 9-10.  To the extent that the proposed class includes Washington residents, Meracord stopped servicing Washington residents in 2011 and settled a separate class action that included all Washington residents before that date.  *See* discussion *infra*; Thomsen Decl. Exs. 20-21.

[4]  Meracord also incorporates the arguments in defendant Linda Remsberg's Opposition to Class Certification.

[5]  Declaration of Linda Remsberg in Supp. of Oppos. to Plffs.' Mot. for Class Cert. ["Remsberg Decl."] ¶ 2.

[6]  Remsberg Decl. ¶ 3.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 3

they were delivered to the appropriate recipients.  To perform these services, Meracord obtained "money transmitter" licenses in over 40 different jurisdictions.[7]  In the early 2000's – years before defendant Linda Remsberg acquired the company[8] – Meracord expanded its business and began performing payment processing services on behalf of customers who entered into contracts with debt relief service providers ("DRSPs").[9]

**B.      Debt Relief Service Providers and Their Separate Contracts with Customers.**

DSRP's are companies and individuals, many of whom were attorneys, that negotiated debt reductions for their customers.  The customer would enter into a written contract with the DRSP, by which the customer would agree to pay the DRSP certain fees in exchange for the DRSP's efforts to negotiate settlements with the customer's debtors (the "DRSP Contract").

The customer contracted solely with the DRSP to provide the debt settlement services; Meracord was not a party that contract.  As evidenced by the particular contracts of the named Plaintiffs, the contracts almost always contained "choice-of-law" provisions.  For instance, Plaintiff Amrish Rajagopalan, who resides in North Carolina, entered into a contract with his DRSP that calls for application of "the laws of the State of Florida."[10]  This Court already has acknowledged that the provision was not procedurally unconscionable, finding that Mr. Rajagopalan had a "reasonable opportunity to review the arbitration clause and assent to its terms."[11]  Plaintiff Marie Johnson-Peredo, a Pennsylvania resident, contracted with an attorney,

---

[7]  Remsberg Decl. ¶ 12.  If a company advertises itself as engaging in money transmission, a money transmitter license is required.  The industry is highly regulated and requires a company to undergo an intensive qualification process before it can receive a money transmission license from a particular jurisdiction.  Remsberg Decl. ¶ 12.

[8]  Plaintiffs misdescribe Ms. Remsberg's role in the company by stating that she "shifted Meracord's focus to servicing the debt settlement industry . . ."  The only evidence is that Meracord performed services for the debt settlement industry years before she acquired Meracord in 2007.  Remsberg Decl. ¶ 19 & Ex. 2.

[9]  Historically, Meracord's business was "seller-finance."  Customers would use Meracord to facilitate payments as part of a real estate contract where a purchaser agreed to pay the seller over time.  Remsberg Decl. ¶¶ 10-14.

[10]  Thomsen Decl. Ex. 7 at 4 ¶ 10.

[11]  *See Rajagopalan,* 2012 U.S. Dist. LEXIS 29849 at *3.

1   The Lloyd Ward Group, and the contract calls for the application of Texas law.[12]  Plaintiff

2   Robert Hewson, another Pennsylvania resident, contracted with Lifeguard Financial.  His

3   contract requires the application of the laws of Florida.[13]  The contract for plaintiff Karen Hea, a

4   resident of Wisconsin, calls for any dispute to be resolved "under Wyoming law."[14]

5       None of the named Plaintiffs' DRSP Contracts refer to Washington or call for the

6   application of Washington law.  Plaintiffs all agreed that the services provided under the DRSP

7   Contracts would be subject to a different state's laws.  This Court previously held that certain

8   mandatory arbitration provisions were unenforceable, but has not held that the DRSP Contracts'

9   choice of law should be ignored in its entirety when resolving the claims against Meracord.[15]

10      Under the DRSP Contracts, the customers would agree to make periodic payments into

11  an account maintained by a third party account administrator.  When enough funds had

12  accumulated in that account, the DRSP would contact the customer's creditor(s) and negotiate a

13  reduction in the total debt outstanding in exchange for an immediate payoff of the reduced debt.

14  The customer used the money in the account maintained by the third-party account administrator

15  for the creditor payment by directing the account administrator to disburse the funds.[16]

16      The DRSP Contracts spelled out the fees the DRSPs would earn and how those fees

17  would be paid from the customers' accounts.[17]  Each customer acknowledged and authorized the

18  payments to occur.  Depending on when the Plaintiffs entered their contracts, such as before the

19

20  ───────────────────

    [12]  Thomsen Decl. Ex. 10 at 4 ¶¶ 10-11.

21  [13]  Thomsen Decl. Ex. 13 at 5 ¶ 7.

    [14]  Paynter Decl. Ex. 14 at 10 ¶ 4.3 (HEA 000093).

22
    [15]  *Rajagopalan,* 2012 U.S. Dist. LEXIS 29849; *Canada v. Meracord,* 2013 U.S. Dist. LEXIS 13786 (W.D. Wash.

23  Jan. 31, 2013).  This Court did not rule on the arbitration clause in Ms. Hea's agreement with her service provider.

24  [16]  Typically, the programs would require the customer to make payments over a year to 18 months before there
    were sufficient funds in the account to allow for a lump-sum payment to the creditors.

25  [17]  *See* Thomsen Decl. Ex. 7 at 4 ¶¶ 8-9 (Rajagopalan); Ex. 10 at 3-4 ¶ 9 (Johnson-Peredo); Ex. 13 at 3 ¶ 5
    (Hewson); Paynter Decl. Ex. 14 at 9 ¶ 2.7 (Hea).  Ms. Hea has not produced her entire DRSP Contract, but
    paragraph 2.7 refers to an addendum that references a payment schedule.

adoption of the FTC's Telemarketing Sales Rule in October 2010[18], Plaintiffs also may have agreed to pay the DRSP fees immediately.[19]

## C.    Meracord's Role and Separate Agreements with Plaintiffs.

Meracord's relationship with its customers was subject to a separate contract, a "Sign-Up Agreement," in which Meracord agreed to provide third-party account services on the customer's behalf.[20]  Notably, Meracord did not provide debt relief services and never held itself out as doing so.  Each customer <u>acknowledged</u> that he or should understood that Meracord was not acting as a DRSP, but solely as a third-party account administrator.[21]

The "Sign-Up Agreement" has evolved over the seven years encompassed by this lawsuit, so different versions of the agreement existed at different times.  But Plaintiff Rajagopalan's contract is a typical example.[22]  Mr. Rajagopalan agreed to allow Meracord to periodically debit his bank account and deposit those funds into an account that Meracord maintained for him.  Meracord agreed to disburse funds from his account as he directed.  As with all customer accounts, Meracord kept the account outside the control of his DRSP.[23]

The contract disclosed the fees that Meracord would charge.[24]  Meracord charged a monthly fee – just a few dollars – for the account administration services it provided.  Mr. Rajagopalan, like every customer, acknowledged that he read and understood the contract and

---

[18]  In October 2010, the FTC adopted a new regulation that barred DRSPs from collecting fees for certain services before any credit settlements occurred.  *See* 16 C.F.R. § 310.4(a)(5)(i).  Before then, DRSPs could charge fees at the beginning of the debt reduction program.

[19]  For example, Mr. Rajagopalan entered into his contract in May 2010 and agreed to pay fees of $2,306.  Thomsen Decl. Ex. 7 at 4 ¶ 9.  Mr. Hewson, who entered into his contract in August 2009, agreed to pay a fee of 15% of the total debt "regardless of the reduction of the debt amount thereafter."  Thomsen Decl. Ex. 13 at 3 ¶ 5.

[20]  Thomsen Decl., Ex. 8 at 1-2 (Rajagopalan), 11 at 1-3 (Johnson-Peredo), 14 at 1-4 (Hewson), 17 at 1-2 (At the time of Ms. Hea's contract with Meracord, the document was called "Payor Services Agreement.").

[21]  Thomsen Decl. Exs. 8, 11, 14 at 5 ¶ 4 (Rajagopalan; Johnson-Peredo; Hewson), 17 at 3 ¶ 1 (Hea).

[22]  *Id.* at Ex. 8 at 5-6 ("Terms and Conditions").

[23]  Remsberg Decl. ¶ 33.

[24]  Thomsen Ex. 8 at 1 ("NoteWorld Fees").

that he authorized the fees and payment processing activities detailed in the contract.[25]

The contract also incorporated "Terms and Conditions" that contained several provisions which contradict many of Plaintiffs' factual allegations.[26] Each customer (including Plaintiffs) acknowledged that Meracord did not act as a debt adjuster:

> Customer acknowledges that [Meracord] does not provide debt repayment or reduction planning, debt management, counseling, budget planning, debt adjusting, altering or negotiation services and does not act as intermediary between Customer and his/her creditors for those purposes, or provide any other similar assistance to Customer in settling or adjusting any debt with Customer's creditors.[27]

In the Terms and Conditions the customer also acknowledged that Meracord was not responsible for any "damages arising out of a dispute between the Customer and their [DRSP] . . ." The provision also excludes Meracord from liability for any act or omission of any third party.[28]

Meracord provided each customer the ability to track every transaction that occurred with respect to the customer's account. Meracord had systems that allowed customers to access their accounts online, where they could verify account balances, transaction history, and any payments made.[29] Meracord also had a large call-center, interactive phone and e-mail chat systems, and an extensive website that provided information and responses to customers' inquiries and questions.[30] Plaintiffs, with one exception, availed themselves of those services.[31]

## D.     Meracord's Class Settlement for Washington Residents and Withdrawal.

Until May 2011 and as more fully described in the opposition of Meracord's CEO, Linda

---

[25]  Thomsen Ex. 8 at 1-2.

[26]  Plaintiffs received the "Terms and Conditions" with their entry of the Sign-Up Agreement, which incorporates the Terms and Conditions by reference. *See, e.g.,* Thomsen Decl. Ex. 8 at 1 ("Services").

[27] Thomsen Decl. Ex. 8, 11, 14 ("Terms & Conditions" ¶¶ 4, 6); Ex. 17 ("Terms & Conditions" ¶¶ 1-3).

[28]  Thomsen Ex. 8 at 5 ¶ 6 ("Limitation on Liability").

[29]  Remsberg Decl. ¶ 36.

[30]  Remsberg Decl. ¶ 36.

[31]  Consol. Am. Class Action Compl. (Dkt. 146) ¶¶ 86, 95-97 (Rajagopalan's contacts); ¶¶ 112-13, 121, 123 (Hewson's contacts); ¶¶ 154-58 (Johnson-Peredo's contacts).

Remsberg, Meracord did not view its third-party account services as being subject to Washington's Debt Adjusting Act ("the DAA"), RCW 18.28 *et seq.*  There was no guidance and Meracord believed it fell within one of the exemptions to the DAA.[32]  In 2010, a plaintiff sued Meracord in a class action on behalf of all Washington residents in the United States District Court for the Eastern District of Washington.  The lawsuit, entitled *Wheeler v. NoteWorld*, Case No. cv-10-202-LRS, alleged that Meracord was subject to the DAA.

Simultaneously, in another case pending in the same court, to which Meracord was not a party, plaintiffs raised claims against a third-party administrator that performed services similar to that of Meracord.  *See Carlsen v. Global Client Solutions*, LLC, No. 11-cv-84858 (E.D. Wash. 2011).  The court had certified questions to the Washington Supreme Court, including whether a company that acts as a third-party administrator engages in "debt adjusting" under the DAA, and whether that company falls under an exemption in the DAA.  On May 12, 2011, the Washington Supreme Court recognized for the first time that a third-party administrator could be considered a "debt adjuster" and otherwise subject to the limitations on fees in the DAA.  *See Carlsen v. Global Client Solutions, LLC*, 171 Wn.2d 486, 256 P.3d 321 (2011).[33]

Based on the *Carlsen* decision, Meracord resolved the *Wheeler* lawsuit on a class-wide basis.[34]  Meracord received a release (approved by the court) that applied to all Washington residents who were Meracord customers from June 24, 2006 to October 18, 2011.[35]  Based on

---

[32]  For instance, Meracord was subject to FDIC oversight, rules of the National Automatic Clearinghouse Association, and the Bank Secrecy Act, 31 U.S.C. § 5312(a)(2)(R).  It viewed itself as exempt under the DAA because the DAA exempted certain types of companies doing business under laws of State or the U.S. "relating to" banks.  RCW 18.28.010(1)(b).  The Court rejected this position in *Carlsen v. Global Client Solutions, LLC*, 171 Wn.2d 486, 498, 256 P.3d 321 (2011), but Meracord nonetheless viewed that the exemption applied at the time.

[33]  The Legislature later reversed the Court's decision on this point by amending the DAA to clarify that third-party account administrators were not "debt adjusters."  2012 Wash. Sess. Laws ch. 56, § 1(b); RCW 18.28.010(1)(b).

[34]  Meracord also settled class actions that released claims of certain Missouri residents that were Meracord customers from January 1, 2004 to September 19, 2007 and Georgia residents that were Meracord customers from July 1, 2003 to July 29, 2011.  Federal courts approved of the settlements and releases.  Thomsen Decl. Exs. 19-22.

[35]  Thomsen Decl. Exs. 19-20.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  the *Carlsen* decision and the *Wheeler* case, Meracord stopped servicing Washington residents.[36]

2         By receiving a class release in *Wheeler* and halting all services for Washington residents,

3  Meracord believed that it had resolved all questions about its compliance with the DAA.

4  Meracord continues to believe that the DAA does not apply to its services.  Rather, Meracord

5  views itself as being subject to the laws of the particular states in which it had obtained money

6  transmission licenses and for whom it performed services on behalf of that state's residents.[37]

7  **E.**  **Meracord is Now Defunct, Has Ceased Operating and Has Dwindling Assets, But is Able to Respond to the Named Plaintiffs' Claims.**

8         As this Court is aware, over the last two years, Meracord has ceased operations.  It laid

9  off its employees in November 2013 and no longer transacts business of any kind.  Meracord

10  also has completed the laborious process of relinquishing its money transmission licenses.

11  Meracord's last employee is its CEO, Ms. Remsberg, who is managing Meracord from her

12  home.  Meracord exists at this point for no other purpose than to defend this lawsuit.[38]

13         Although it ceased operating nearly a year ago, Meracord has resolved successfully all

14  other outstanding claims.  In 2013, the U.S. Consumer Financial Protection Bureau ("CFPB")

15  investigated allegations related to Meracord's involvement with the debt settlement industry and,

16  on October 4, 2013, Meracord entered into a Consent Decree with the CFPB.  Under the Consent

17  Decree approved by this Court, Meracord paid $1.376 million.[39]  The CFPB acknowledges that

18  Meracord owes no further obligations.  The CFPB is now administering a Civil Penalty Fund

19  (with over $119 million) where it already has allocated $11 million to pay individuals who allege

20  they were harmed by Meracord.[40]

21         Meracord is unaware of any lawsuit or pending customer complaint other than those of

---

[36] Remsberg Decl. ¶ 42.

[37] Remsberg Decl. ¶¶ 43-44.

[38] Remsberg Decl. ¶ 3.

[39] Thomsen at ¶ 2, Ex. 1.

[40] Thomsen Ex. 2.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   the four Plaintiffs in this case and one other "copycat" lawsuit of a single individual now

2   pending in the United States District Court for Arizona, in which the same counsel to these

3   Plaintiffs is representing the plaintiff.  That case is now stayed, although Plaintiff's counsel has

4   indicated that they intend to move to transfer that case to this Court.

5          Meracord's only substantive asset is the funds remaining from an insurance policy,

6   currently in the amount of approximately $450,000 and dwindling.  The proceeds also are

7   funding Ms. Remsberg's defense of this suit because she was covered under the same policy.

8   Meracord also owes a contractual obligation to indemnify Ms. Remsberg for her attorneys' fees,

9   costs, and any judgments that may be entered against her in this lawsuit.

10                                  **III.  ARGUMENT**

11         Certification is "an exception to the usual rule that litigation is conducted by and on

12  behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S.

13  Ct. 2545, 61 L. Ed. 2d 176 (1979).  Plaintiffs can only come within the exception if they

14  affirmatively demonstrate their compliance with Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564

15  U.S. __, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  Rule 23 is not a "mere pleading

16  standard," rather Plaintiffs must prove that there are "in fact" sufficiently numerous parties,

17  common questions of law or fact," typicality of claims or defenses, and adequacy of

18  representation, as required by Rule 23(a).  *Id.*  Plaintiffs must also satisfy through evidentiary

19  proof that they meet at least one of the provisions of Rule 23(b).  *Id.*  The Court should evaluate

20  the Plaintiffs' evidentiary proof based on the preponderance of evidence standard.  *See Southwell*

21  *v. Mortgage Invs. Corp. of Ohio, Inc.*, 2014 U.S. Dist. LEXIS 112362 at *3 (W.D. Wash. Aug.

22  12, 2014).  In this instance, no "exception" to the usual rule is justified.

23  **A.     Class Certification is Improper Because Plaintiffs Do Not Meet the Requirements
            Under Rule 23(a).**

24

25         1.     There are not questions of fact or law common to the class.

    "While the commonality requirement of Rule 23(a)(2) is usually a minimal burden for a

1   party to shoulder, a class should not be certified when there are no truly common questions of

2   fact or law presented by the plaintiff's claims."  *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 211

3   F.R.D. 228, 231 (S.D.N.Y. 2002) (no commonality when transactions involved different

4   representations and subjective understandings among consumers); *Morgan v. Markerdowne*

5   *Corp.*, 201 F.R.D. 341, 348-50 (D. N.J. 2001) (no commonality in fraud putative class action).

6          Plaintiffs contend that common questions of fact and law exist based on Meracord's

7   "scheme" with DRSPs "to extract . . . abusive fees for debt relief services that were not

8   provided."  But that contention assumes the very standard of Rule 23(a)(2):  it presupposes that

9   common questions of fact exist because of an alleged "scheme."  Plaintiffs fail to provide proof

10  of any such scheme, let alone a preponderance of evidence.  *Southwell*, 2014 U.S. Dist. LEXIS

11  112362  at *3.  Instead, Plaintiffs want this Court to overlook the actual facts: that over 300

12  distinct DRSP entities serviced hundreds of thousands of customers based on hundreds of

13  thousands of separate contracts, that Meracord acted as a third-party account administrator under

14  its own contracts, and all potential class members authorized the fees that were paid.  Plaintiffs'

15  allegation of one cohesive scheme over the course of seven years is a virtual impossibility,

16  especially in light of constantly evolving state and federal laws.

17         Plaintiffs' core allegation is that Meracord "schemed" with hundreds of DRSPs to violate

18  the DAA[41] by transferring initial fees from customer accounts in excess of $25, and charging

19  monthly fees in excess of 15% of a single payment.[42]  *See, e.g.,* Motion at 17; Tafoya Decl. ¶ 14.

20  This allegation fails to distinguish between Meracord's fees – all of which complied with the

21  DAA  – and those charged by DSRP's.[43]  Failure to distinguish between these fees is fatal to

---

[41]  This allegation makes no sense because it assumes that each DRSP (and Meracord) knew that the DAA would apply and trump the contracts entered into between the DRSPs and their customers that called for the application of other states' laws.  If true, one could imagine a clever plaintiff to claim exactly the opposite, namely, that the DRSP (and Meracord) knew that the DAA would apply and fraudulently induced the customer to enter the DRSP's contract based on the assumption that his or her own state's law would apply.

[42]  Plaintiffs also allege that Meracord violated RCW 18.28.110(4), but that provision only applies to debt adjusters and not third-party account administrators.

[43]  Plaintiff's fees paid to Meracord were well within the DAA's limits if the statute applied to Meracord.  *See*

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

commonality.  While the DAA <u>may</u> apply to Meracord's fees, there is no basis to find that the DAA applies to the fees the DRSPs charged which Meracord passed on, particularly when those fees are based on contracts that non-Washington residents entered into outside of Washington with other non-Washington parties.[44]  In fact, under prevailing law this Court would have to undergo a customer-by-customer analysis to determine which state's law applies.[45]

A federal court sitting in diversity must look to the forum state's choice of law rules to determine controlling substantive law in a proposed nationwide class action.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).  This Court uses the "presumptive local law" rule, applying Washington law to claims brought here unless there is "an actual conflict between the laws or interests of Washington and the laws or interests of another state." *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175 (W.D. Wash. 2006).

There is undoubtedly a conflict here.  While Washington's DAA places a set limit on initial and periodic charges a debt adjuster (not an account administrator)[46] may collect, not all states' laws do; there is great variance among the states' laws.

The named Plaintiffs illustrate the variety.  Mr. Rajagopalan lives in North Carolina, but contracted with a DRSP in Florida that calls for applying Florida law.  North Carolina's "Debt Adjustment Act" does not limit the fees that can be collected.  *See* N.C. Gen. Stat. § 14-423(1)-

---

Thomsen Decl. Ex. 26.

[44]  While a few cases have held that non-Washington residents can bring a claim against a Washington corporation under the CPA, *see Schnall v. AT&T Wireless Servs., Inc.*, 139 Wn. App. 280, 284, 161 P.3d 395 (2007) and *Keithly v. Intelius, Inc.*, 2011 U.S. Dist. LEXIS 79733 (W.D. Wash. May 17, 2011), those cases have not addressed the DAA.  Neither the DAA, nor cases interpreting it, have held that the DAA applies to a corporation located in Washington that collects a fee for a non-Washington resident, as authorized by the non-resident's contract with a separate party. Plaintiffs base their CPA claim on the DAA and with no violation of the DAA, the CPA claim fails.

[45]  Plaintiffs' counsel agreed to this point in cases in Arizona and California, where they claim that those states' laws govern Meracord.  *See, e.g.,* "Anderson's Resp. to Fidelity Motion to Dismiss," *Anderson v. Meracord, et al.*, No. 13-cv-2470 (D. Az. 2013) (Dkt. 29) (arguing that Meracord was an escrow agent under Arizona law).

[46]  Plaintiffs assert that Meracord was a debt adjuster.  But they agreed in their actual contracts that Meracord was not performing any debt adjusting on their behalf.  Under the DAA, Meracord was a "third-party account administrator."  *See* RCW 18.28.010(5).  The Legislature clarified state law after the Supreme Court's decision in *Carlsen. See* 2012 Wash. Session Laws ch. 56, § 1(b); RCW 18.28.010(1)(b).

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

(3).  Likewise, while Florida limits the amount of fees, the limit is higher than Washington's

DAA.  *See* Fla. Stat. § 817.802(1).  Florida also excludes "debt management . . . provided in the

practice of law," which explicitly exempts Mr. Rajagopalan's DRSP, which claimed it was

providing legal services.[47]  Fla. Stat. § 817.803(1).

Ms. Johnson-Peredo and Mr. Hewson are Pennsylvania residents.  While Pennsylvania

has a "Debt Management Services Act" that limited fees, the Legislature repealed the act

"insofar as it applies to debt settlement services," allowing any fee agreed to by the parties.  *See*

2014 Pa. Laws 118, § 2103(b).  Ms. Johnson-Peredo's contract with her DRSP also calls for the

application of Texas law.  At the time she entered her contract, Texas allowed charging any fees

if otherwise "fair and reasonable."  2005 Tex. Gen. Laws 336, § 394.210.  Ms. Hea lives in

Wisconsin, whose state law does not have a cap on fees.  Wis. Stat. § 218.02.  Her contract with

her DRSP calls for application of Wyoming law, which generally prohibits "debt adjusting" but

also expressly excludes "debt adjusting . . . incurred in the practice of law in this state."  Wyo.

Stat. § 33-14-102.  She alleges her DRSP agreed to provide her "legal representation," which

would fall within the statute's exemption.  *See* Consol. Am. Compl. ¶ 167.  A further

complication is that many of these DRSP Contracts call for application of law of a different state

than the customer's or DRSP's residence, raising the possibility that a third state's laws apply.

Even with just the four Plaintiffs, there is a broad mixture of applicable statutes and laws,

with varying and conflicting rules regarding fee limits and exemptions.  In a proposed class that

exceeds 200,000, the combinations to consider are endless.

Once a conflict of laws has been established, the parties' rights and liabilities are

determined by the local law of the state which, with respect to that issue, has the most

"significant relationship" to the occurrence and the parties.  *Johnson v. Spider Staging Corp.*, 87

Wn.2d 577, 580, 555 P.2d 997 (1976).  Courts consider four primary contacts: (a) the place of

---

[47] Thomsen Decl. Ex. 7 at 2 ¶ 3 (RAJ000008).  Washington's DAA also excludes attorneys.  RCW 18.28.010(1)(a).

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

the injury; (b) the place of the conduct causing the injury; (c) the parties' domicile, residence,

nationality, place of incorporation and place of business; and (d) where the parties' relationship,

if any, is centered. *Id.* All of these factors weigh <u>against</u> the DAA's uniform application and, at

minimum, require the Court to engage in an endless series of conflicts analyses by considering

individualized facts applicable to each customer.

Plaintiffs' injuries would have occurred in the state where they reside, as the alleged

injury is to their personal finances and they executed the contracts in their state of residence.

The conduct causing the injury occurred wherever the DRSP contacted the customer. *See*

*Rajagopalan*, 2012 U.S. Dist. LEXIS 29849 at *2-3 (noting that in a series of calls, Mr.

Rajagopalan's DRSP "led him to believe" certain facts and "a company representative assured

him" that the company would settle his debts). The parties' residency weighs heavily in favor of

their home states. Even for Meracord, this factor does not necessarily point to Washington.

Although once headquartered in Tacoma, Meracord is a Delaware corporation and during the

time relevant to this case, had 12 offices in 6 different states. There is no reason to believe that

Washington was the "center" of any relationship where Plaintiffs' contact with Meracord took

place over the phone or via email, if it occurred at all.[48] Washington's interest also is small

because the Washington accounts included in Plaintiffs' class definition is just a fraction of the

total accounts at issue, <u>a mere 2.47%</u>.[49] Meracord's fees at issue which originate from those

accounts is even a smaller percentage – <u>0.0079%</u> ($3,256.23).[50]

Because Washington's DAA does not automatically apply to each customer, there is no

common question of law that would resolve a <u>nationwide</u> class action. The class, as alleged,

---

[48] *See* Consol. Am. Compl. at ¶¶ 86, 95-97 (Rajagopalan); ¶¶ 112-113, 121, 123 (Hewson); ¶¶ 154-58 (Johnson-Peredo); ¶ 180 (Hea).

[49] Zinn Decl. ¶ 9.

[50] Zinn Decl. ¶ 10. If Plaintiffs are asserting that Meracord collected its own fees that violated the DAA, that is inaccurate. *See* Thomsen Decl. Ex. 26. For each Plaintiff it is undisputed that Meracord only charged fees for the services it provided in an amount that fell well below the statutory limits. *See* Thomsen Decl. Ex. 26.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 14

would have members from more than 50 jurisdictions who entered into separate contracts with their DRSP's, who reside in just as many locations.  The Court would need to engage in a series of endless choice of law analysis for each customer to assess the competing interests of Washington.  As the Washington Supreme Court noted in *Schnall* "based primarily on the burden of applying multiple states' laws, an <u>overwhelming number</u> of federal courts have denied certification of nationwide state-law class actions." *Schnall v. AT&T Wireless Servs., Inc.,* 171 Wn.2d 260, 271, 259 P.3d 159 (2011) (emphasis in original).

> 2.      <u>The named Plaintiffs' claims are not typical of the claims of the proposed class.</u>

Plaintiffs fail to demonstrate that their claims are typical of those of the putative class, because they depend on fraudulent acts committed by the specific DRSPs and will by highly individualized based on each class member's situation. *See, e.g. Rajagopalan*, 2012 U.S. Dist. LEXIS 29849 at *2-3.  Their circumstances will inherently differ from those of other class members and their dealings with the other 300 DRSPs they contracted with.

Plaintiff allege "typicality" because each Plaintiff was "fraudulently induced" by a DRSP.  *See* Motion. at 9.  But each Plaintiff contracted with a <u>different</u> DRSP.  Mr. Rajagopalan used a service provider called First Rate Debt Solutions (later P&E Solutions or FBL Associates).  Mr. Hewson used a service provider called Debt Relief Center (later SBL/Safeguard or Life Guard Financial).  Ms. Johnson-Peredo used a law firm Lloyd Ward & Associates and Ms. Hea used a service provider named Debt Life Solution.[51]  Plaintiffs seek to certify a class of customers, however, that dealt with over 300 DRSPs and regardless of whether they were the DRSPs the Plaintiffs contracted with at all.[52]

Because of the vast number of DRSPs, the underlying representations will differ significantly, with some contracts and representations providing greater disclosures than others.

---

[51]  Thomsen Decl. Exs. 10, 16.

[52]  For instance, for Ms. Hea, per Meracord's electronic records there were only 54 Meracord customers that had accounts that listed the same service provider as her.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 15

1   This Court already found that Mr. Rajagopalan was "actively engaged and had adequate

2   opportunity to review [the contract's] terms," had at least a ten-day opportunity to cancel the

3   contract before making the first payment, and even negotiated the particular terms of his debt

4   program with his DRSP's representative. *Rajagopalan*, 2012 U.S. Dist. LEXIS 29849 at *9-10.

5   In contrast, Ms. Peredo-Johnson claims that she only "orally" agreed with her DRSP and her

6   signature was "esigned" so she did not have the chance to review the contract's terms at all. *See*

7   Am. Compl. ¶¶ 143-44.  Plaintiffs did not even speak with the same representatives or receive

8   the same representations.  Their experiences illustrate the fact-specific inquiry that would need to

9   be made to decide whether a particular customer was "duped."[53]  Whether a deceptive act exists

10  will depend on the specific communications between each customer and the DRSP as well as,

11  the customer's sophistication, reasonable reliance, and personal knowledge.

12          Plaintiffs cannot even establish typicality with the services they received.  Three

13  Plaintiffs contend they contracted with a DRSP to "negotiate creditor settlements," while one

14  contracted with a DRSP to "negotiate with her mortgagor for a lower monthly payment."  Three

15  of the DRSP's referred to themselves as providing attorney services.  But Plaintiffs seek to

16  certify a class that includes customers for a whole array of services.  The services ranged from

17  "Consulting and Seminars" to "Web Services," and from "Tax Relief, to "Student Loans."[54]

18  What services these companies and individuals provided and whether the DAA or other laws

19  apply to those services – e.g., attorneys are exempt under many of the laws, including the DAA –

20  make the circumstances of potential class members entirely different from those of the Plaintiffs.

21          Plaintiffs assert that "each named plaintiff was charged abusive fees for services that

22  were not provided," but that assertion only highlights the lack of typicality with the class.

23

24  _____

[53]  Plaintiffs did not even receive information by the same means, but rather through entirely different media. *See* Consol. Am. Class Action Compl. ¶¶ 77 (online), 101 (flyer in workplace), 132 (television), 166 (online ad).

25  [54]  Per Meracord's records it has identified 20 different product lines that it provided third-party account services. Zinn Decl. ¶ 13.  While services for DRSPs comprise the largest product line, it is only one of many.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 16

1   Whether "services" were provided (or not) is fact-specific that turns on each individual

2   customer.  Even for the four Plaintiffs, substantial differences exist among each of them as to the

3   "value" of the services Meracord provided because it provided account management services to

4   each Plaintiff for different periods of time.[55]

5   But even if Plaintiffs received no services from their DRSPs, their circumstances contrast

6   starkly with that of the class because a substantial portion of the class did receive services.  Even

7   Plaintiffs admit that over $500 million was paid to creditors.  *See* Tafoya Decl. ¶ 12.  Even

8   customers not obtaining any creditor settlements may still have received services.  Creditors may

9   have refused to accept a settlement despite the DRSPs' best efforts or customers may have failed

10  to complete their program, thwarting the DRSP's ability to do anything.  Those are all nuances

11  that make the claims of the individual Plaintiffs not typical of other class members.

12  Other differences exist among the named Plaintiffs and the proposed class.[56]  Ms. Hea, in

13  particular, did not contract with Meracord until 2012, a year after this case was filed.  She also

14  agreed "that any dispute I have with Meracord will be pursued by me individually and not as part

15  of a class action."[57]  At the time she contracted with Meracord, Washington already had

16  amended the DAA to clarify that third-party account administrators, such as Meracord, were not

17  debt adjusters.  2012 Wash. Sess. Laws ch. 56, § 1(b); RCW 18.28.010(1)(b).  Each Plaintiff,

18  except Ms. Hea, opened his or her account with Meracord before the decision in *Carlsen* and

19  before adoption of the FTC's Telemarketing Sales Rule, at a time where the state of the law was

20  uncertain.  These facts make Plaintiffs' claims atypical of those of the proposed class.

21  **B.   Certifying the Class Under Rule 23(b)(1)(B) is Improper Because There are Not
        Any Competing Interests in a Limited Fund Other than the Named Plaintiffs.**

22  There is no current risk that adjudications as to the Plaintiffs will, as a practical matter, be

23

---

24  [55]  *See* Thomsen Decl. Ex. 25.

    [56]  *See* Thomsen Decl. Ex. 25.

25  [57]  Thomsen Decl. Ex. 17 at 1.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 17

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

dispositive of the interest of others, the requirement that must be met to certify a class under Rule 23(b)(1)(B).  Courts "narrowly construe" the rule as they "are wont to certify under Rule (23)(b)(1)(B) except in the most compelling situations." *In re Paxil Litig.,* 212 F.R.D. 539, 553 (C.D. Cal. 2003).   Plaintiffs do not provide a compelling reason to certify a "limited fund" class.

First, this is not a "limited fund" case.  A traditional limited fund class exists where "there is a pool of money coming from an outside source, the amount of which is not subject to manipulation by the parties." *In re Telectronics Pacing Sys., Inc.,* 221 F.3d 870, 873 (6th Cir. 2000).  But Meracord's remaining assets are being used to defend itself and Ms. Remsberg.  The company maintains control over those funds.  Second, the court typically certifies limited fund classes where the parties reach a settlement.  *See id.* at 872 (considering propriety of class settlement); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999) (considering appeal of decision approving settlement).  Here, no settlement has been reached. Because Plaintiffs have yet to prove Meracord's liability, and defendants vigorously deny all allegations, Plaintiffs have no vested interest in the company's funds.[58]

This is also not a "limited fund" case because there <u>are</u> adequate funds to pay all claims that have been asserted.  Plaintiffs assume that class treatment is needed because insufficient funds exist to pay claims of all possible class members.  But there is not a single claim by a customer against Meracord in any other forum except the claims of the four Plaintiffs and one other person represented by the same counsel in another lawsuit now stayed.  The value of those claims average about $15,000 and could arguably be resolved in full even with Meracord's poor financial condition.[59]  Because Meracord is defunct, ceased operating over a year ago, and stopped providing services to customers and DRSPs even earlier, the prospect that "hundreds of

---

[58]  Moreover, a common feature of the limited fund is that class members do not receive notice and they may <u>not</u> "opt out." *Telectronics*, 221 F.3d 870 at 872.  Here, there may be class members better served by pursuing their claims against Meracord individually rather than having their claims negated by costs and fees.

[59]  Meracord already offered to make two of the Plaintiffs "whole" by virtue of a prior Offer of Judgment.  *See* Declaration of Allen Garrett (Dkt. 104) Exs. 1-3.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 18

thousands" of alleged victims would suddenly emerge and make competing claims against Meracord's remaining assets is pure speculation. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 621 (W.D. Wash. 2003) (finding the lack of parallel, individual suits to weigh against the superiority of class certification). Rather, certification would create the very problem of a "limited fund" by "merely serv[ing] to create lawsuits where none previously existed." *Id.* at 622.

Moreover, Plaintiffs make no effort to show that, were there a class of over 200,000 customers, that each of those customers would be treated "equitably." As Plaintiffs concede, Meracord possesses limited funds (now about $450,000 but declining daily) that would dissipate well before any class distribution occurs. Were funds available, Plaintiffs candidly admit that they would seek to have their own attorneys' fees and costs paid first, guaranteeing that none would remain for class distribution. Motion at 12. The only "equitable" treatment resulting from certification of a limited fund class here is that that every class member would recover nothing.

## C.   Certification Under Rule 23(b)(3) is Improper Because a Class Action is Not Superior to Other Available Methods for Handling the Controversy.

Plaintiffs must show under Rule 23(b)(3) that the class action is superior to other methods of litigating the case. The Ninth Circuit notes "a primary determination is whether the class action is superior to, and not just as good as, other available methods for handling the controversy, and such a determination lies in an area where the trial court's discretion is paramount." *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

1.   <u>A class action is not superior because class members will not recover any amount</u>.

Plaintiffs seek to certify a class that would consist of over 200,000 customers[60] and, per their theory, entitled to damages in excess of $2.06 billion. Yet Plaintiffs also admit that Meracord is now defunct and has no substantive assets except the remnants of a wasting

---

[60]  Plaintiffs make no effort to identify how many class members there may be, and thus do not meet the numerosity requirement. *See Southwell*, 2014 U.S. Dist. LEXIS 112362 at *3.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 19

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

insurance policy of only $450,000.  *See* Plfs. Mot. at 1, 11-12.  Plaintiffs allude to the existence

of the "Washington state surety bonds," but Meracord's sureties are not parties to the case and,

even if they were, the sole bond that Meracord posted in Washington (and now long expired)

was for $160,000, which hardly changes this case's economics.

Under Plaintiffs' own calculation, and ignoring all other fees and costs, a class member

would receive $2.50 if Plaintiffs prevailed or perhaps $3.30 if they are entitled to the

Washington bond.  The cost to notify class members alone would far exceed any recoverable

amount.  *See In re Hotel Tel. Charges*, 500 F.2d 86, 91 (9th Cir. 1974) (class certification not

appropriate when average recovery was only $2; recovery would be consumed by notice costs).

Plaintiffs' counsel already claim an entitlement to nearly $600,000 in attorneys' fees[61]

and openly admit that any class recovery should be "<u>less</u> allowances for costs and attorneys'

fees."  *See* Motion. at 12 (emphasis added).  Were a class certified and liability established, no

class member would receive anything.  *See In re Phenylpropanolamine (PPA) Prods.*, 214

F.R.D. at 621 ("[M]inimal recovery - when considered in relation to the enormous costs in time,

effort, and burdens on the court - argues against the superiority of class certification."); *In re*

*Hotel Tel. Charges*, 500 F.2d at 90 ("When, as here, there is no realistic possibility that the class

members will in fact receive compensation, then monolithic class actions raising mind-boggling

manageability problems should be rejected.").  Under these circumstances – where the class

would receive no benefit – class treatment cannot be a superior method to simply allowing the

four Plaintiffs to pursue their individual claims.[62]

       2.    <u>A class action is not superior because the CFPB's Civil Penalty Fund is an</u>
<u>alternative remedy which is better than class treatment.</u>

---

[61]  *See* Plffs.' Supp. Reply to Mot. for Attorneys' Fees (Dkt. 167).

[62]  Plaintiffs may argue that a class action is necessary to "punish" Meracord.  Meracord has been punished.  This lawsuit caused it to cease operations, terminate its employees, and become defunct.  Plaintiffs may also contend that no financial incentive exists for others to pursue Meracord except in a class action.  But even if that reason was correct (which it is not), "it is not a sufficient reason to 'headlong plunge into an unmanageable and interminable litigation process.'"  *Thompson v. American Tobacco Co.*, 189 F.R.D. 544, 556 (D. Minn. 1999) (citation omitted).

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 20

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1    "It makes little sense to certify a class where a class mechanism is unnecessary to afford

2  the class members redress." *In re Phenylpropanolamine (PPA) Prods.*, 214 F.R.D. at 622

3  (holding that "an already existing remedy presents an additional barrier" to certification); *Chin v.*

4  *Chrysler Corp.*, 182 F.R.D. 448, 462-65 (D. N.J. 1998) (lack of superiority where recall program

5  and administrative remedy existed); *Berley v. Dreyfus & Co.*, 43 F.R.D. 397, 398-99 (S.D.N.Y.

6  1967) (rejecting proposal to "replace a simple, amicable settlement procedure with complicated,

7  protracted litigation"); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 504-05 (C.D. Cal. 2011) (*ibid.*).

8    Plaintiffs fail to mention, despite taking prior credit,[63] that the CFPB already secured a

9  consent judgment against Meracord based on the same factual allegations.  Meracord paid

10  $1.376 million under the terms of that judgment.[64]  The byproduct of the CFPB's case and others

11  is the existence of a Civil Penalty Fund that, as of March 2014, had over $119 million in

12  deposits.[65]  The CFPB already has allocated $11 million to "the eligible class of victims in the

13  Meracord case . . ." that would be "enough to compensate fully those victims . . ."[66]

14    The fact that the government agency with responsibility to enforce consumer financial

15  protection laws has sued Meracord already, obtained a consent decree, and adopted a process to

16  pay customer claims (without the need to pay attorneys fees and costs), strongly supports that a

17  class action is unnecessary and, in fact, an inferior method of adjudication.  *See Pennsylvania v.*

18  *Budget Fuel Co.*, 122 F.R.D. 184, 185 (E.D. Pa. 1988) (class action not a superior alternative to a

19  state attorney general action, which had reach settlement agreements with dealers and

20  negotiating others).  The existence of a viable alternative remedy not only makes a class action

21  not superior, but calls into question whether the Plaintiffs are adequately protecting other class

22

---

[63]  Plaintiffs previously used the CFPB's consent judgment as justification for a substantial award of attorneys' fees.
*See* Plf. Canada's Resp. to Court's Show Cause Order (Dkt. 184) at 2.  Ironically, they now criticize Meracord
because it has now paid that very judgment.  *See* Paynter Decl. ¶ 4.

[64]  *See* Thomsen Decl. Ex. 1.

[65]  *See* Thomsen Decl. Ex. 2.

[66]  *See* Thomsen Decl. Ex. 2(c)

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

members' interests: "A representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011).

> 3.   Plaintiffs desire to pursue Meracord's sureties in future lawsuits does not justify class certification in this case.

Plaintiffs want this Court to certify a class because they are pursuing Meracord's former sureties.[67] But the Court must decide whether a class action is a superior for "this controversy," not what value it has to Plaintiffs' counsel in another. *See* Rule 23(b)(3). As it were, Plaintiffs' counsel already is pursuing a class action against Meracord's sureties in the Northern District of California, captioned *Cheeks v. Fidelity & Deposit Co. of ML.*, *et al*., No. 13-cv-1854 (N.D. Cal.). That matter has been pending for some time and the parties already have engaged in motion practice. If Plaintiffs need a "nationwide" class action to pursue Meracord's sureties that avenue is already available to them in their existing lawsuit in California.

**D.    Certifying the Class under Rule 23(b)(3) is Improper Because Common Questions Do Not Predominate Over Questions Affecting Individual Class Members.**

Under Rule 23(b)(3), a court may certify a class action only if it first determines that the question of law or fact common to the members of the class predominate over any questions affecting only individual class members." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). Plaintiffs have the burden of showing that common questions of law or fact predominate. *Id*. at 1188. The standard under 23(b)(3) is "somewhat redolent" of the commonality requirements, but "far more demanding." *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013).

Rule 23(b)(3)'s requirement defeats class certification. As discussed, this Court must

---

[67] Plaintiffs refer to the "proceeds of the surety bonds in the remaining states," and their counsel's declaration refers to $17.8 million in surety bonds. But the sureties are not parties to this case or bound by any judgment. Regardless, the sureties provided most of the bonds years after the allegations in this lawsuit and they would not be subject to any claims (i.e., California in 2012). All the bonds also have since expired.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 22

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1    engage in a choice of law analysis to decide what state (or territory) has the most "significant

2    relationship" to each customer.  Where the law does not derive from a "unitary federal cause of

3    action" but rather from the law of the 50 states, "differences in state law will compound the

4    disparities among class members from the different states." *Amchem Prods., Inc. v. Windsor*, 521

5    U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  This is because the predominance

6    inquiry requires a court to consider how a trial on the merits of a certified class would be

7    conducted to prevent a "series of individual trials."  *Southwell*, 2014 U.S. Dist. LEXIS 112362 at

8    *13.  Here, the Court must conduct "individual trials" just to determine the applicable law.

9         When a request for class certification requires applying differing state laws, the party

10   seeking certification bears the burden to demonstrate, through an extensive analysis of state law

11   variances, that class certification does not present insuperable obstacles.  *Duncan v. Northwest

12   Airlines, Inc.*, 203 F.R.D. 601, 613 (W.D. Wash. 2001).  Plaintiffs do not even address the large

13   variance in state laws at all.  *See* Motion at 14.  Plaintiffs rely on this Court's opinion in

14   *Rajagopalan* in claiming that it has already been decided that Washington's DAA is applicable

15   to a non-Washington resident.  Motion at 13.  But that is untrue.  This Court did not address the

16   DAA's applicability to non-Washington residents.  Rather, the analysis this Court conducted –

17   describing Mr. Rajagopalan's calls with his DRSP, identifying representations allegedly made on

18   which he  relied, addressing his ability to review the contracts before signing them, etc. –

19   demonstrates the type of "individual trial" necessary to determine the law applicable to each

20   customer.  *Rajagopalan*, 2012 U.S. Dist. LEXIS 29849 at *2-*3.

21        Even if Washington's DAA applied to Meracord's dealings with all of its customers,

22   predominance does not exist because the DAA does not mechanically apply as Plaintiffs assume.

23   Whether a given fee violates the DAA is a fact-specific inquiry that depends on the type of fee

24   imposed and the specific customer's debt, including the amount and when it was incurred.  *See,

25   e.g.* RCW 18.28.080.  While the DAA may limit an initial charge or a percentage of the total

payment made at one time, it does not bar other fees if the DRSP provided services unrelated to the adjusting of debt.[68]  If the fee is not a "debt adjustment fee," it does not count towards any limit.  Whether the DAA bars other fees requires an examination of each particular fee the DRSP imposed on a case-by-case basis.  Likewise, the DAA allows the charging of fees up to 15% of "the <u>total debt listed</u> by the debtor on the contract . . . ." RCW 18.28.080(1) (emphasis added).  But the "total debt listed" varies with each customer, as the Plaintiffs' own debt illustrates, ranging from $15,374 (Mr. Rajagopalan) to hundreds of thousands of dollars (Ms. Hea).[69]  Here, it is clear that individual issues are at least as important as the common issues, so the predominance requirement is not satisfied.  *Connelley*, 294 F.R.D. at 578.[70]

## IV.  CONCLUSION

This Court should deny Plaintiffs' motion for class certification.

DATED this 6th day of October, 2014.

CALFO HARRIGAN LEYH & EAKES LLP

By *s/Angelo J. Calfo*
     Angelo J. Calfo, WSBA #27079

By *s/Randall Thomsen*
     Randall Thomsen, WSBA #25310

999 Third Avenue, Suite 4400
Seattle, WA  98104
Telephone:  (206) 623-1700
Email: angeloc@calfoharrigan.com
          randallt@calfoharrigan.com

Attorneys for Defendant Meracord LLC

---

[68]  Plaintiffs wrongly assume that the DAA bars "all fees," but it limits fees only for "debt adjusting services." RCW 18.28.080.  The DAA defines "debt adjusting" as "the managing, counseling, settling, adjusting, prorating, or liquidating of the indebtedness of a debtor, or receiving funds for the purpose of distributing said funds among creditors in payment or partial payment of obligations of a debtor." RCW 18.28.010(2).  It does not refer to (or bar) fees for services unrelated to debt adjusting.

[69]  Thomsen Decl. ¶ 10, Ex. 9 ¶ 19; Ex. 18 at 1; Consol. Am. Class Action Compl. ¶¶ 79, 165.

[70] While Washington's DAA may apply to Washington residents, potential class members already released Meracord in *Wheeler*.  Meracord received a class release for <u>all</u> Washington residents who were Meracord customers from June 24, 2006 to October 18, 2011.  After that date, Meracord provided no further services.

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of October, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

       Steve W. Berman
       steve@hbsslaw.com

       Thomas E. Loeser
       toml@hbsslaw.com

       Stuart M. Paynter
       stuart@paynterlawfirm.com

       Celeste H. G. Boyd
       cboyd@paynterlawfirm.com

       H. Andrew Saller, Jr.
       asaller@vjglaw.com

DATED this 6th day of October, 2014.

                       *s/Susie Clifford*

DEFENDANT MERACORD, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 25